UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM ARNOLD,

    Plaintiff,

v.                                                          Case No. 8:21-cv-398-TPB-AEP

CHARTER COMMUNICATIONS, LLC,

    Defendant.
_____/

**ORDER**

This cause comes before the Court upon Defendant's Motion for Sanctions against Plaintiff for Spoliation (Doc. 47), in which Defendant requests that the Court dismiss Plaintiff's Complaint with prejudice or, in the alternative, that a spoliation presumption instruction be read to the jury at trial. Upon due consideration of Defendant's Motion, Plaintiff's brief in opposition to Defendant's Motion (Doc. 50), and after holding a hearing on the matter on April 12, 2022, the Court finds that, for the reasons that follow, Defendant's Motion is due to be denied.

    **I.**     **BACKGROUND**

On January 19, 2021, Plaintiff filed the instant action in state court as a result of a motor vehicle accident that occurred on January 31, 2020 (Doc. 1). According to Plaintiff, Defendant's employee negligently operated Defendant's vehicle and collided with Plaintiff's vehicle (Doc. 1). Defendant removed the case to federal court in February 2021 (Doc. 1). On November 4, 2021, Defendant deposed

Plaintiff (Doc. 47-1). During the deposition, Plaintiff testified that he sold the vehicle which had been involved in the accident to a "junk place" approximately four months earlier (Doc. 47-1, at 61:24-62:4, 64:24-65:5). Notably, the Defendant's disclosure of expert report was due by October 15, 2021 and the discovery deadline was December 17, 2021 (Doc. 13). However, four days after the Plaintiff's deposition, on November 8, 2021, the parties moved to extend the discovery deadline by ninety days (Doc. 22). According to the parties, they needed more time to complete discovery because Plaintiff testified that he may undergo a medical procedure as a result of the alleged injuries he sustained in the subject accident (Doc. 22, at ¶ 3). The parties requested additional time to only conduct discovery due to Plaintiff's potential need for additional medical procedures (Doc. 22, at ¶ 4). The discovery deadline was extended to March 17, 2022 and the undersigned *sua sponte* extended the deadline for the parties to file dispositive motions (Doc. 23).

On January 14, 2022, Defendant moved to amend its expert disclosure and replace its previously disclosed expert (Doc. 29), which the Court granted (Doc. 30). On January 24, 2022, Defendant moved to compel an independent medical examination of Plaintiff (Doc. 31). The Court held a hearing on the motion on February 8, 2022, where it granted Defendant's motion to the extent that Defendant's new expert's examination of Plaintiff had to remain within the scope of a rebuttal life care planner expert (Docs. 36, 39). Then, on February 10, 2022, Defendant moved to amend its expert disclosure and extend the discovery deadline once again (Doc. 40). In its motion to amend, Defendant sought to designate its

already disclosed expert as a vocational rehabilitation expert (Doc. 40, at ¶ 5). The Court held a hearing on Defendant's motion on February 23, 2022 where it granted the motion and extended the discovery deadline to May 5, 2022 for the parties to have ample time to provide the vocational rehabilitation expert reports and depose the experts (Doc. 46). That same day, after the hearing, Defendant filed the motion for sanctions now before the Court (Doc. 47).[1] Since then, the parties have jointly moved for another extension of time to complete discovery for expert witness depositions (Doc. 56), which the Court granted (Doc. 59).

## II.   DISCUSSION

Defendant requests that this Court sanction Plaintiff by dismissing the case with prejudice or, in the alternative, requests a spoliation presumption instruction be read to the jury.[2] Defendant argues that Plaintiff had a duty to preserve the vehicle, that the vehicle was crucial evidence in the case, that Plaintiff engaged in bad faith by getting rid of the vehicle, and that Plaintiff's spoliation has prejudiced Defendant's ability to prepare its defenses.

---

[1] Notably, Defendant did not advise the Court of any spoliation issues during the February 8, 2022 or February 23, 2022 hearing or in any of the motions filed before the discovery deadline.

[2] Defendant does not specify what type of adverse inference instruction it requests. *See Wandner v. Am. Airlines*, 79 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015) ("[T]here are different types of adverse inferences, ranging in differing and ever-increasing levels of harshness. One type results in a jury being instructed that certain facts are deemed admitted and must be accepted as true. Another type results in the imposition of a mandatory, albeit rebuttable, presumption. A third type permits a jury to presume that the lost evidence is relevant and favorable to the innocent party. With this third type of adverse inference, the jury also considers the spoliating party's rebuttal evidence and then decides whether to draw an adverse inference."). Nevertheless, the Court's conclusion is not altered by any distinction between the available jury instructions.

District courts maintain broad discretion to impose sanctions, a power which "derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (citation omitted).[3] In imposing sanctions for discovery abuses, such as spoliation, district courts seek to "prevent unfair prejudice to litigants and to insure [sic] the integrity of the discovery process." *Id.* (citation omitted).

"Spoliation" refers to "the intentional destruction, mutilation, alteration, or concealment of evidence." *Floeter v. City of Orlando,* No. 6:05-cv-400, 2007 WL 486633, at *5 (M.D. Fla. Feb. 9, 2007) (citation and quotation marks omitted). Sanctions for spoliation may include "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Flury*, 427 F.3d at 945. "Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Id*. at 944. The party seeking sanctions establishes its burden by proving (1) the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to

---

[3] Rule 37(e) provides for sanctions when electronically stored information (ESI) that "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). However, Rule 37(e) is inapplicable in this case because it only applies to ESI and Defendant has not raised any issues regarding the spoliation of ESI. Thus, the Court must follow the common law regarding the alleged spoliation of Plaintiff's vehicle.

prove its prima facie case or defense. *See. Mech. Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009) (citing *Golden Yachts, Inc. v. Hall,* 920 So. 2d 777, 781 (Fla. 4th DCA 2006)); *see also Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (finding that the movant must demonstrate he was unable to prove his claims due to the unavailability of the destroyed evidence). In addition to these factors, the sanctions of dismissal or the imposition of an adverse inference jury instruction are appropriate only when there is evidence of bad faith. *See Flury,* 427 F.3d at 944; *Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir. 1997) (an adverse inference is drawn when a party fails to preserve evidence and the party's failure was predicated on bad faith). While the Eleventh Circuit does not require a showing of malice in order to find bad faith, it has determined that "mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (citing *Bashir*, 119 F.3d at 931).

Here, there is no question that the vehicle involved in the accident existed at one time and that Plaintiff had a duty to preserve the evidence.[4] The duty to preserve arises when the party who is in possession of evidence "knows, or reasonably should know, [it] is relevant [to litigation or potential litigation]...." *St. Cyr v. Flying J Inc.*, No. 3:06-cv-13, 2007 WL 1716365, at *3 (M.D. Fla. June 12, 2007). At the hearing, Defendant asserted that Plaintiff sold the vehicle in May 2021, four months after

---

[4] It is unclear from the record whether Plaintiff's counsel advised Plaintiff of his duty to preserve his vehicle.

5

filing this lawsuit in state court and three months after removing it to federal court. It is debatable of when exactly Plaintiff's duty to preserve was triggered given that Defendant sent several pre-suit letters from Defendant's third-party administrator (Doc. 47-2).[5] Notwithstanding, Plaintiff had a duty to preserve the vehicle at the latest upon filing suit in state court on January 19, 2021. Therefore, Defendant has established that the vehicle existed at one time and that Plaintiff had a duty to preserve it at least beginning on January 19, 2021.

However, a question exists regarding whether the vehicle was, in fact, "crucial evidence." To show that the vehicle was crucial to Plaintiff's case, "it is not enough that the spoliated evidence would have been relevant to a claim or defense." *QBE Ins. Corp. v. Jordan Enters., Inc.*, 280 F.R.D. 694, 696 (S.D. Fla. 2012). "'[E]vidence is not crucial if it is available from an alternate source or if the claim or defense to which it relates is adequately supported by alternate evidence.'" *Wills v. Home Depot U.S.A., Inc.*, No. 6:18-cv-1194, 2019 WL 4410150, at *4 (M.D. Fla. Sept. 16, 2019) (quoting *United States ex. rel. King v. DSE, Inc.*, No. 8:08-cv-2416, 2013 WL 610531, at *8 (M.D. Fla. Jan. 27, 2013). Rather, evidence is crucial "when it goes to the heart of a party's ability to prove its claim or defense." *Id*. (quoting *Kimbrough v. City of Cocoa*, No. 6:05-cv-471, 2006 WL 3500873, at *5 (M.D. Fla. Dec. 4, 2006)). Thus, "spoliated evidence must be so crucial as to completely prevent the movant from defending itself, not merely prevent the movant from

---

[5] Notably, the letters do not mention the vehicle or otherwise request that Plaintiff maintain possession of the vehicle for Defendant to inspect (Doc. 47-2).

6

defending itself completely." *Id.* (quoting *Landry v. Charlotte Motor Cars, LLC*, 226 So. 3d 1053, 1058 (Fla. 2d DCA 2017)).

In the instant case, Defendant has failed to show that the vehicle is crucial to its defense. Inspection of the vehicle likely could have helped Defendant, but the lack of it does not completely prevent Defendant from defending itself. *See Landry*, 226 So. 3d at 1058. At the hearing, Defendant conceded that its expert had not indicated that his or her opinion was hindered by the unavailability of the vehicle. Additionally, Defendant's continued assertion that the vehicle is crucial to its defense and that it is severely prejudiced by the vehicle's spoliation is belied by the Defendant's delay in raising this issue. Defendant argues that Plaintiff was sent several letters from Defendant's third-party administrator and had Plaintiff responded to these letters, Defendant would have had an opportunity to inspect the vehicle. Yet, the letters do not specifically mention the vehicle (Doc. 47-2). Significantly, it appears that Defendant's first inquiry into the vehicle was in an email on October 28, 2021, nine months after the initiation of the lawsuit, when a senior paralegal at Defendant's counsel's office sent an email to Plaintiff's counsel and asked "[i]s the Plaintiff's vehicle available for inspection, or has it been repaired or no longer in possession of Mr. Arnold?" (Doc. 50-1). The record is silent on whether Plaintiff's counsel responded to the email or if Defendant had reason to think Plaintiff was not in possession of the vehicle at that time. Notably, this email was sent two weeks after Defendant's expert disclosure deadline, which was October 15, 2021 (Doc. 13). If Defendant had no knowledge of the status of the

vehicle, it surely learned about it during Plaintiff's deposition on November 4, 2021, a little over a month before the initial discovery deadline (*See* Doc. 13). However, Defendant did not file the instant motion for sanctions until three months later (*See* Doc. 47). This timing demonstrates that Defendant did not view the need to inspect the vehicle as crucial, since it was never requested prior to the expert deadline and was never specifically asked about by the Defendant's attorney until the November deposition and was not raised to the court until approximately three months later. These delays undercut Defendant's assertion that the vehicle is crucial to the case. *See SE Mech. Servs., Inc. v. Brody*, No. 8:08-cv-1151, 2009 WL 2242395, at *3 & n.9 (M.D. Fla. July 24, 2009) (finding that a three-month delay weighed against a finding that the allegedly spoliated evidence was crucial to the case).

Defendant also argues that it needed to inspect the vehicle to determine if there was hidden or latent damage to the vehicle and determine how hard, if at all, Plaintiff's vehicle was hit by Defendant's employee's vehicle. According to Defendant, the only evidence that has been discovered reflects some damage, but very little, to Defendant's vehicle. Defendant contends that had it been able to inspect the vehicle and found no hidden or latent damage, it would be reasonable for a jury to determine any injuries Plaintiff claims to have suffered as a result of the alleged accident may have more likely been due to Plaintiff's prior and subsequent accidents, the existence of, Plaintiff has confirmed in discovery. This argument weighs against finding the vehicle was crucial to Defendant's case. It appears Defendant has evidence that Plaintiff was involved in other accidents before and

8

after the one at issue in this case, it has its own vehicle which shows little damage, and has photos of Plaintiff's vehicle which Defendant asserts also shows little damage to the vehicle. (Doc. 47, at ¶ 10; Doc. 47-1, at 84). Moreover, Plaintiff's expert did not have an opportunity to inspect the vehicle and was able to formulate a relevant opinion. Although it could have been helpful, the vehicle is not crucial to Defendant's case because the defense to which the vehicle relates is adequately supported by alternate evidence. Based on the foregoing, Defendant has failed to establish how the vehicle is crucial to its case. *See QBE Ins. Corp.,* 286 F.R.D. at 698 ("[d]efendant's failure to establish that the allegedly spoliated evidence was 'crucial' to its defense is alone reason to deny the motion").

Lastly, even if Defendant satisfied all three elements—which it does not—it still must prove that Plaintiff acted in bad faith in order to prevail on the motion. *Flury*, 427 F.3d at 944. Bad faith "in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). "This consideration is key in evaluating bad faith because the party's reason for destroying evidence is what justifies sanctions (or a lack thereof). 'Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case.'" *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (quoting *Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)). Where, as here, direct evidence of bad faith is unavailable, bad faith may be founded on circumstantial evidence when the following criteria are met: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense

of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Cerrato v. Nutribullet, LLC*, 8:16-cv-3077, 2017 WL 5149206, at *2 (M.D. Fla. Nov. 6, 2017) (quoting *Walter v. Carnival Corp.*, 09-20962-civ, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)). Here, Plaintiff testified that he sold the vehicle to a junk yard four or five months before the deposition and that the vehicle had not been driven or moved since approximately February 2020 (Doc. 47-1, at 64:24-65:9). The sequence of events and the timing of the sale do not demonstrate bad faith. Clearly, if Plaintiff desired to act in bad faith he would have disposed of the vehicle much sooner and not during the pendency of the case. Thus, the affirmative act causing the loss, that is the sale of the vehicle, can be credibly explained as not involving bad faith but rather to dispose of a vehicle that had not been driven or moved in over a year. As Defendant has failed to demonstrate the required bad faith, dismissal or an adverse inference jury instruction are not appropriate sanctions.

Accordingly, it is hereby

ORDERED:

1.  Defendant's Motion for Sanctions (Doc. 47) is DENIED.

DONE AND ORDERED in Tampa, Florida, on this 23rd day of June, 2022.

*[signature]*

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:   Counsel of Record